UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN IAVARONI, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:14-CV-01327 |
| v. | |
| WOODLOCH PINES RESORT, et. al, | (MEHALCHICK, M.J.) |
| Defendants. | |

**MEMORANDUM**

Presently pending before the Court is a motion for summary judgment in the above-captioned "slip and fall" negligence action, filed by the Defendants on August 12, 2015. (Doc. 21). This motion has been fully briefed, and oral argument on the motion was held on February 23, 2016. Upon consideration of the arguments presented in the briefs and at oral argument, for the reasons stated herein, the Court will deny Defendants' motion for summary judgment (Doc. 21).

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Jean and Joseph Iavaroni commenced this lawsuit on August 12, 2015, seeking damages against Defendants Woodloch Pines Resort, Woodloch Pines, Inc., Woodloch Resort, and Woodloch Hospitality Corporation ("Defendants"), for a slip-and-fall accident sustained by Plaintiff Jean Iavaroni ("Mrs. Iavaroni"), on a grassy lawn at Woodloch Pines Resort located in Hawley, Pennsylvania on July 23, 2012. (Doc. 1).

The relevant facts are presented in the light most favorable to the Plaintiffs, the non-moving party. Plaintiffs, residents of Seaford, New York, travelled to Woodloch Pines Resort

("Woodloch"), to celebrate their fiftieth anniversary with their extended family. Plaintiffs were guests at the Woodloch from Saturday, July 21, 2012, to Tuesday, July 24, 2012. On the afternoon of July 23, 2012, Mrs. Iavaroni participated in a barbeque luncheon on the front lawn outside of Woodloch's North Lodge. (Doc. 22, at 1). Shortly after the luncheon, Mrs. Iavaroni and her daughter-in-law walked across the North Lodge Lawn towards the location of the carnival event that her grandchildren were participating in. (Doc. 22, at 1). As she crossed the lawn, she began to proceed through a straw-covered section. (Doc. 22, at 1). As Mrs. Iavaroni was traversing the straw, she slipped on a slick foreign substance that was purportedly concealed by the straw. (Doc. 25, at 1). She claims that she was several steps into the straw before she slipped and that she had no difficulty with her footing until she unknowingly encountered the foreign substance hidden beneath the straw. (Doc. 25, at 2). While Mrs. Iavaroni concedes that she did not observe any accumulation of a slippery substance prior to her slip, she claims she discovered a white substance that looked like foam and a blue colored substance on the straw and on her shoe immediately after her slip and while she was being helped up from the ground. (Doc. 24-1, at 46). As a result of her fall, Mrs. Iavaroni sustained injuries to her shoulder (i.e., a high-grade partial tear of the subscapularis tendon in her right shoulder).

Soon after the incident, Mrs. Iavaroni was escorted to a nearby bench and was tended to by an employee, who assisted her in preparing an accident report. She documented at that time that she slipped and fell on a "wet, straw covered slippery substance." (Doc. 24-1, at 63). According to Mrs. Iavaroni, later that day, an unidentified male employee informed her that on

the previous day, a "Double Dare Contest" was held at the location where Mrs. Iavaroni slipped. (Doc. 25, at 3)[1]. An activity sheet for Sunday, July 22, 2012, provided by the Resort confirms that a Double Dare Contest was conducted on Woodloch's lawn that day. (Doc. 24-1, at 63).

On August 12, 2015, Defendants filed the instant motion for summary judgment, together with corresponding exhibits. (Doc. 21). On August 17, 2015, Defendants submitted a statement of facts (Doc. 22), and a brief in support of their motion for summary judgment (Doc. 23). On August 28, 2015, Plaintiffs filed a brief in opposition to Defendants' motion for summary judgment, submitted together with supporting exhibits (Doc. 24), and a statement of facts (Doc. 25). On September 21, 2015, Defendants filed a reply brief. (Doc. 28). Having been fully briefed, this matter is ripe for disposition.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party,

---

[1] While there are no records regarding the activities that were conducted during the Double Dare Contest held on Sunday, July 22, 2012, a number of employees have testified as to the types of activities and the food products typically used at these contests in the past.

and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

III. DISCUSSION

    A. NEGLIGENCE CAUSE OF ACTION

Plaintiffs assert a negligence claim based on premises liability. Because jurisdiction in this case is predicated on diversity, the substantive law of the forum state—here, Pennsylvania—applies. Under Pennsylvania law, a plaintiff must prove the following four elements to recover in an action for negligence: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 739 (3d Cir. 2009) (quoting *Swift v. N.E. Hosp. of Phila.,* 690 A.2d 719, 722 (Pa. 1997)). The crux of Defendants' argument in

support of their motion for summary judgment is that they owed no duty to Mrs. Iavaroni because she discovered a dangerous condition that was both obvious and avoidable and nevertheless proceeded voluntarily to encounter it.

### 1. Existence of a Duty of Care

The existence of a duty owed by a defendant is a threshold inquiry in a negligence action. In premises-liability actions, the duty of care owed by a possessor of land to an entrant upon the land depends upon the status of the entrant at the time of the accident; namely, whether the entrant is a trespasser, licensee, or invitee. Here, it is undisputed that Mrs. Iavaroni was a business invitee at the time of the incident at issue. Section 343 of Restatement (Second) of Torts, adopted by Pennsylvania courts, defines the duty that a possessor of property owes to an invitee. Specifically, a possessor of land will be subject to liability for the physical harm caused to his invitee by a condition on the land if he:

(a) Knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) Should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) Fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).

As a corollary to this rule of liability, under Pennsylvania law, no duty is owed for "physical harm caused to [invitees] by any activity or condition on the land whose danger is known or obvious to [them], unless the possessor should anticipate the harm despite such knowledge or obviousness." *Carrender v. Fitterer,* 469 A.2d 120, 125 (Pa.1983) (quoting

of Torts § 343A). [2] "Consequently, there are two separate and disjunctive lines of inquiry on this 'no-duty' issue: one subjective and the other objective." *Devlin v. Home Depot USA, Inc.,* No. 3:12-CV-00766, 2013 WL 6835409, at *3 (M.D. Pa. Dec. 23, 2013) (citing *Berman v. Radnor Rolls, Inc.,* 542 A.2d 525, 531 (Pa. Super. Ct. 1988)). The objective inquiry concerns whether the danger is "obvious." For a danger to be "obvious," "'both the condition and the risk [must be] apparent to and . . . recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Carrender*, 469 A.2d at 120 (quoting Restatement (Second) of Torts § 343A cmt. B). The subjective inquiry concerns whether the danger was "known" to the invitee. For a danger to be "known," its existence must be perceived and the "probability and gravity of the threatened harm must be appreciated.'" *Carrender,* 469 A.2d at 120. However, "[t]he mere fact one engages in activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained." *Bullman v. Giuntoli*, 761 A.2d 566, 572 (Pa. Super. Ct. 2000).

---

[2] Under Pennsylvania law, the assumption of risk analysis merely operates as a counterpart to a duty analysis. *Carrender,* 469 A.2d at 125. Indeed, as Pennsylvania Supreme Court remarked:

> By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. . . . It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers.

*Carrender,* 469 A.2d at 125 (citations omitted).

Generally, the question of whether a danger is known or obvious is a question of fact for the jury. However, a trial court may determine as a matter of law "that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Howell v. Clyde,* 620 A.2d 1107 (Pa. 1993).

Defendants move for summary adjudication in their favor on the basis that Plaintiffs have failed to establish the duty element of a negligence cause of action. Specifically, Defendants argue that Mrs. Iavaroni voluntarily confronted an open and obvious danger by traversing the straw-covered area on the North Lodge Lawn despite the availability of an alternative route, thereby assuming the risk of her injuries and negating any duty of care Defendants might have otherwise owed to her.

Plaintiffs, however, contend that the open and obvious danger posed by straw is independent of and distinct from the dangerous condition concealed by the straw that actually caused Mrs. Iavaroni's accident; namely, a Jell-O like substance placed on the North Lodge Lawn the day before during a Double Dare Contest. Indeed, Plaintiffs assert that Defendants conflate *where* Mrs. Iavaroni fell with *what* caused her fall. The complained-of condition, as represented by Plaintiffs, is the slipperiness of the foreign substance concealed by straw—the alleged defect is not the straw itself.

Here, while straw may very well pose "some quantum of obvious danger, this framing too narrowly isolates the danger actually involved in this case." *Perasso v. Caesars Cove Haven, Inc.*, No. 3:10-CV-1476, 2012 WL 2121244, at *4 (M.D. Pa. June 12, 2012). Here, the threat is not exclusively straw, as Defendants so posit. If that were the case, the apparent risk would be that of a tripping hazard, or, had the record pointed to attendant circumstances suggesting that

it had recently rained, a likely slipping hazard. Rather, the straw purportedly concealed a slick substance—"an unexpected threat going beyond the obvious." *Perasso*, 2012 WL 2121244, at *4. While Mrs. Iavaroni certainly may have confronted an open and obvious danger in the form of loosely strewn straw on the North Lodge Lawn, the purportedly foreign substance concealed by the straw posed an enhanced risk of slipping, the "probability and gravity" of which would not have necessarily been obvious or appreciated. *Perasso*, 2012 WL 2121244, at *4.

The nuances presented in this case closely parallel those addressed in *Perasso v. Ceasars Cove Haven, Inc.*, an unreported Middle District case involving a plaintiff who fell on a step adjoining two different levels while attempting to turn on the lights in her dark, windowless hotel suite. 2012 WL 2121244, at *1. Defendants moved for summary judgment on the grounds that they owed no duty of care to the plaintiff. In denying the motion, the court offered the following reasoning:

> Here, the threat was not merely an unlit hotel suite. If that were the case, the sort of injury expected would be a stubbed toe, a bruised shin, or something of the like. Instead, this dark hotel suite concealed multiple levels, an unexpected threat going beyond the obvious. If, for example, [plaintiff] had encountered a full flight of stairs in the darkness or something even more ridiculous, such as a lion, it could not be argued that the probability and gravity of those threatened harms had been appreciated. In other words, while tripping on a coffee table would be an obvious possibility in proceeding into a dark hotel suite, tripping down a full flight of stairs would not be. While this case admittedly presents a threat on the more pedestrian side of the spectrum, the record does not indicate the magnitude of this threat—i.e. the rise of the stair—and reasonable fact finders could disagree as to whether this was the sort of threat which should have been obvious to [plaintiff].

*Perasso*, 2012 WL 2121244, at *4.

Accordingly, when viewing the evidence in the light most favorable to the Plaintiffs, the nonmoving party, the Court finds that reasonable minds could disagree as to whether Mrs. Iavaroni voluntarily encountered a known or obvious dangerous condition and thus, it cannot

conclude as a matter of law that Defendants' duty of care it owed to Mrs. Iavaroni as an invitee was abrogated when she voluntarily chose to encounter that portion of the lawn covered with straw.

However, the Court's analysis does not end here, as Defendants have further complicated this line of inquiry by contending in their reply brief and at oral argument that Plaintiffs have adduced insufficient evidence establishing the existence of a foreign substance that purportedly caused Mrs. Iavaroni's fall. Specifically, Defendants argue that Plaintiffs have attempted to evade summary judgment by essentially offering nothing more than pure speculation as to the cause of Mrs. Iavaroni's slip. While Defendants have cogently argued that a failure to prove what caused Mrs. Iavaroni's fall consequently negates any duty owed to Plaintiffs, that argument places the cart before the horse, as this challenge is more appropriately addressed within the context of causation. Indeed, should this Court find that Plaintiffs cannot prove, without speculating, what caused Mrs. Iavaroni to fall, the Plaintiffs would fail to satisfy their burden of establishing causation and the duty element of a negligence cause of action would necessarily become inconsequential to this case. In light of this framework, the Court turns to whether Plaintiffs have met their burden of proffering sufficient evidence of causation.

    **2. Sufficient Evidence of Causation**

Under Pennsylvania law, the mere occurrence of an accident does not establish negligent conduct. *Hillelson v. Renner*, 130 A.2d 212, 214 (Pa. Super. Ct. 1957) ("Proving that an accident happened, or the existence of an opportunity for it to happen is entirely insufficient to establish negligence.") (citation omitted). "There remains to be proved the vitally important link of causation." *Cuthbert v. Philadelphia*, 209 A.2d 261, 263 (Pa. 1965) (citations omitted). It is axiomatic that a jury cannot be permitted to return a verdict based merely on speculation or

conjecture. *Smith v. Bell Telephone Co.*, 153 A.2d 477, 479-80 (Pa. 1959). Rather, as noted by the Pennsylvania Supreme Court:

> [T]here must be evidence upon which logically its conclusion may be based. . . . Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be [sought].

*Smith*, 153 A.2d at 479-80 (citations omitted) (emphasis in original).

Thus, the plaintiff need not "prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities." *Cuthbert*, 209 A.2d at 263-64. "It is not necessary . . . that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability." *McMillan v. Mountain Laurel Racing, Inc.,* 367 A.2d 1106, 1111 (Pa. Super. Ct. 1976). However, other non-negligent "causes, including the conduct of the plaintiff and third persons . . . [must be] sufficiently eliminated [as suggested] by the evidence." *Calhoun v. Jersey Shore Hosp.*, 378 A.2d 1294, 1298 (Pa. Super. Ct. 1977) (quoting Restatement (Second) of Torts 328 D(1)(b) (1965)). *See, e.g., Houston v. Republican Athletic Ass'n,* 22 A.2d 715, 716 (Pa.1941) ("Where a defendant is liable for only one or two or more equally probable causes and to say which is a mere guess, there can be no recovery.") (citation omitted).

Pennsylvania courts routinely find that summary disposition in favor of the business owner is appropriate where a plaintiff "could not identify a cause of [the] injuries or merely identified possible causes." *Jones v. Giant Food Stores, LLC*, No. 1:10-CV-1099, 2011 WL 6003193, at *4 (M.D. Pa. Oct. 13, 2011) *report and recommendation adopted*, No. 1:10-CV-1099, 2011 WL 6002986 (M.D. Pa. Nov. 30, 2011) (citing *Freund v. Hyman,* 103 A.2d 658, 659 (Pa.

1954) (upholding nonsuit where plaintiff knew where she fell and photograph showed raised piece of sidewalk in that area, but where she did not produce evidence that the elevation in the step caused her to fall); *Dimino v. Wal–Mart Stores, Inc.,* 83 Pa. D. & C. 4th 169, 172–73 (Pa. C.C.P. 2007) (granting summary judgment for defendant where plaintiff testified she did not know what caused her slip-and-fall but relied on the fact that an oily substance was on her shoe afterwards); *Gallagher v. Dalsania,* 82 D. & C. 4th 118, 126–27 (Pa. C.C.P. 2006) (upholding nonsuit where plaintiff identified several possible causes of trip-and-fall and speculated as to actual cause); *Miller v. Twin Arches Ltd.,* 74 D. & C. 4th 449, 453–59 (Pa. C.C.P. 2005) (granting summary judgment to defendant where plaintiff could identify two possible causes of slip-and-fall but did not present any evidence as to which, if either, was actual cause); *McNeil v. Ginsburg,* 28 D. & C. 4th 531, 534 (Pa. C.C.P. 1996) *aff'd,* 683 A.2d 319 (Pa. Super. Ct.1996) (upholding summary judgment for defendant where plaintiff was unaware of actual cause of slip-and-fall and circumstances indicated numerous possible causes); *Flocco v. Philadelphia,* 29 Phila. Co. Rptr. 1, 6–8 (Pa. C.C.P. 1994) (granting summary judgment for defendant where accident site was strewn with rocks and debris but no evidence was presented showing that these conditions caused plaintiff to fall)).

However, "Pennsylvania courts have stated with equal clarity that a jury may draw inferences from the evidence presented to determine whether the facts support a finding of factual causation." *Ozer v. Metromedia Rest. Grp., Steak & Ale of Pa., Inc.*, No. CIV.A. 04-940, 2005 WL 525400, at *5 (E.D. Pa. Mar. 7, 2005) (citing *First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa. Super. Ct. 1996) ("[I]t is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability."). Applying that standard, courts have repeatedly rejected invitations by defendants to find that "some measure of initial uncertainty voiced by an

injured plaintiff regarding the precise cause of her accident and injury defeats the plaintiff's negligence claim, where the plaintiff's testimony taken as a whole identifies an unsafe condition on the defendant's property as the cause of her injuries." *Stamper-Murray v. U.D.H. Mgmt. Corp.*, No. 1:14-CV-1360, 2015 WL 3840937, at *5 (M.D. Pa. June 22, 2015) (citing *Lowe v. Pirozzi*, No. CIV.A. 05-0548, 2006 WL 1147238, at *34 (E.D. Pa. Apr. 26, 2006) (denying summary judgment); *Meddick v. Brookdale Resort, Inc.*, 878 F. Supp. 696, 698 (M.D. Pa. 1995) (denying summary judgment) (citing *McMillan*, 367 A.2d at 1108-09)).

      Here, Defendants contend that there is insufficient evidence in the record to establish causation. In support of their position, Defendants point to the following deficiencies in the "evidence" presented that they maintain offer only a "retrospective analysis based on hindsight logic," amounting to mere conjecture that a foreign substance caused Mrs. Iavaroni's fall: (1) the only witness identified by the Plaintiffs in discovery is Mrs. Iavaroni; (2) While Mrs. Iavaroni testifies that there was a white substance and blue substance on her shoe after she fell, she cannot demonstrate that the substance on her shoe caused her to fall or came from the ground she was standing on; (3) Plaintiffs rely on a hearsay statement made by an unidentified employee informing Mrs. Iavaroni that Defendants held contests using food, such as Jell-O and whipped cream, near the area where she fell; (4) Plaintiffs offer testimony of various employees who represent that Double Dare Contests utilizing unconventional substances such as pudding were previously held on the North Lodge Lawn, but no employee has a specific recollection of that day's contest; and, (5) the flyer, advertising that the Double Dare Contest would take place on July 22, 2012, the day before Mrs. Iavaroni's accident, is not sufficient evidence that the Double Dare Contest actually took place on July 22, 2012. The heart of Defendants' argument

is that the evidence does not prove, let alone allow for an inference, that any food compounds existed on the North Lodge Lawn the day of the incident. (Doc. 28, at 6-8).

Plaintiffs have offered evidence to support their theory that Mrs. Iavaroni slipped on a foreign blue and white food substance left on the North Lodge Lawn from the Double Dare Contest the day before. Among this evidence is an excerpt from Mrs. Iavaroni's deposition testimony in which she identifies the probable cause of her slip:

> Q    With the understanding that you had just fallen and of course that was a surprise and not a pleasant one, that you have experienced some pain, were you able to look around the area on the ground and see what might have caused you to fall?
>
> A    Was I able to look around? Yes.
>
> Q    Did you see anything that made you think that this might have been what caused me to fall?
>
> A    There were—it was white substances and a blue colored substance. The white substance I had thought looked like foam. There were substances on my shoe. White substance of my shoe. I think after I was helped up there was more evidence of white foamy stuff on the straw.

(Doc. 24-1, at 46).

Plaintiffs also submit the incident report Mrs. Iavaroni completed shortly after her accident. In that report, Mrs. Iavaroni documents that she "slipped and fell on wet straw covered, slippery substance." (Doc. 24-1, at 63).[3] The other evidence cited, including the

---

[3] The Court is hard pressed to find support for Defendants' argument that the proffered evidence warrants a finding that the cause of the accident is merely speculative. Specifically, Mrs. Iavaroni clearly states that she stepped in a slippery substance covered by straw, causing her to slip. Notably, this evidence is more probative than that offered by the slip-and-fall plaintiff in *McMillan v. Mountain Laurel Racing, Inc.,* for example, who testified that:

deposition testimony of various employees who described the food substances typically used at the Double Dare Contest, as well as the flyer detailing the schedule of events taking place the day before Mrs. Iavaroni's accident, are proffered as circumstantial evidence that the blue and white substances Mrs. Iavaroni described observing on her shoe and on the straw were likely residual substances from the Double Dare Contest. Markedly, Plaintiffs point to the deposition testimony of Michael Zorn, a Woodloch employee, who states:

> A. I didn't have much experience with most of the activities. There was a handful of occasions where I worked group activities rather than the zip line, and there was a day there where there was like a five gallon or I mean not a five gallon or a barrel that was full of like pudding, and there was some hay in that area.
>
> . . .
>
> Q. And was the barrel of pudding utilized for a particular activity that was being run by the social department?
>
> A. It was.
>
> Q. And what was the activity?
>
> A. I don't honestly remember. I think it had something to do with having to reach in and find something at the bottom of the barrel and I think the point was to make a mess.
>
> Q. Do you know if it was part of what's called the double dare contest?

> I slipped and I fell, and it was something on the floor, whether—my trousers was wet in the back—but I don't know what I slipped on. There was paper and cups and stuff all over the floor, but I don't know what I slipped on.
>
> 367 A.2d at 1109.

There, the court rejected the contention that the plaintiff failed to identify the cause of her fall despite plaintiff's inability to pinpoint what object or substance resulted in her injuries. Here, Mrs. Iavaroni has consistently and definitively stated that she slipped on a foreign slippery substance, making the source of her injuries significantly less speculative.

>   A.   I believe it was.
>   
>   . . .
>   
>   Q.   What color was the pudding, do you remember?
>   
>   A.   It was like a blue/white mixture, if I recall.

(Doc. 24-1, at 8-10).

In considering the parties' positions, and applying the well-established legal tenants as outlined above to the matter *sub judice*, the Court finds that the question of causation in this case presents a disputed issue of material fact for a jury to resolve. While Defendants invite the Court to parse through the record and make evidentiary rulings at this stage with respect to the proffered evidence, the Court declines to do so as it is clear Plaintiffs have produced enough evidence from which a reasonable jury could reasonably infer that a hazardous condition—a slippery blue and white Jell-O like product—existed when and where Mrs. Iavaroni fell. This is neither a case in which the evidence presents a number of possible causes, nor a case in which the plaintiff later came to an uncorroborated conclusion as to what caused her accident a prolonged period after the accident occurred. Plaintiffs' theory of causation is not mere conjecture, as it is deducible as a reasonable inference from the known conditions at the time of her fall. Any challenge to the veracity of Plaintiffs' evidence is more appropriately reserved for trial. *See e.g., Stamper-Murray*, 2015 WL 3840937, at *5 ("While the plaintiff's testimony undeniably presents some uncertainty regarding this issue [of causation], her statement that immediately upon falling as she lay bleeding . . . on the sidewalk[,] she determined that the footing beneath her was uneven and concluded she had fallen due to this uneven sidewalk is, in our view, sufficient to allow a jury to draw a causal inference.").

Accordingly, the Court will deny Defendants' motion for summary judgment (Doc. 21), on the basis that Plaintiffs have submitted sufficient evidence of causation to create a question of fact for trial.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' motion for summary judgment (Doc. 21).

An appropriate Order follows.

Dated: February 26, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**